(Franklin County Common Pleas.)
March 11, 1901.
CITY OF COLUMBUS, ex rel., etc., v.
LINUS B. KAUFFMAN, DIRECTOR,
etc., et al.

The provision of section 1545-145, R. S., (the Charter Law of Columbus), which vests the entire control of the lighting of the city in the director of public improvements, vests in such officer the management and control of the city's electric light plant.

Section 1545-145 R. S., is not affected by the subsequent amendment of sections 2486-7-8-9, R. S., which continues the general law as to the erection or purchase, and operation of electric light plants by cities.

General statutes are read as silently excluding from their operation the cases which have been provided for by special laws.

WILLIAMS, J.

This action is brought by the city of Columbus on the relation of Ira Crum, Director of Law for said city. against Linus B. Kauffman, Director of Public Improvements of said city; Richard E. Jones, B. F. Thomas, and Frank Howe, the trustees of the Electric Works of said city. and the Board of Trustees of the Electric Works of said city.

There is no dispute as to the facts in the case, the suit being one brought to determine the respective powers and duties of the defendants in the operation of the municipal Electric Light Plant.

The plaintiff is a city of the first grade of the second class.

On March 2, 1896, the city council of the city of Columbus passed a resolution, a copy of which is as follows:

"Whereas, the city council of the city of Columbus Ohio, deem it to be the best interests of the citizens and tax payers that said city should own its electric light plant.

"Therefore, be it resolved by the council of the city of Columbus, Ohio: that it is necessary to issue and sell the bonds of said city in the sum of three thousand dollars ($3,000.00) for the purpose of erecting electric light works in the city and supplying said city and the inhabitants thereof with light, and that the question of issuing and selling the bonds of said city in the sum aforesaid be submitted to the electors of said city at the general election to be held in said city on the 6th day of April, 1896, and that the mayor be directed to give notice of the holding of such election in the manner provided by law."

At the next municipal election this question was submitted to the voters of the city, and two-thirds of the voters voting at such election upon the question of issuing the bonds voted in favor thereof. Subsequently, in November, 1897, the city council duly passed an ordinance entitled "An ordinance to authorize the establishment of an electric light plant for the city of Columbus, Ohio, and to provide for the issue of bonds to raise money therefor." By said ordinance it was ordained "That the director of public improvements

of said city be, and he is hereby authorized for, and on behalf of said city to establish an electric light plant for the purpose of lighting said city." Said ordinance also provided for the issuing of bonds of said city in the sum of $68,000 for the purpose of erecting such electric light works. Pursuant to said ordinance, bonds of the city of Columbus, in said sum of $68,000 were issued, and sold and the proceeds placed in the treasury of said city to the credit of the electric light works fund for use in the construction of the electric light plant provided for by said ordinance.

The then director of public improvements, being the predecessor of the defendant director, constructed an electric lighting plant in said city of Columbus, and placed the same in operation. Said plant continued to be operated in the lighting of the city from the time the plant was completed until July 5, 1900, at which time the defendant Linus B. Kauffman, as director of public improvements stopped the operation thereof, and the same has not since said date been operated. Said defendant, Kauffman, gave as his reason for so doing, that the city of Columbus had failed to provide funds sufficient for its operation, and that he had no authority to operate the plant without such funds having been provided.

In July, 1900, the city council passed an ordinance, by which they attempted to create a board of trustees of the Electric Lighting Works of the city of Columbus, and elected the defendants, Jones, Thomas and Howe, as such board.

The defendant, Kauffman, says that unless it shall be determined by the decree of this court that it is not his duty to do so. he will deliver to said board of trustees, the property, management, custody, care and control of said electric light plant.

The first question to be considered is as to which of the defendants possesses the right to control and operate the electric plant of the city.

The office of director of public improvements is one created by the charter law, enacted in 1893. Section 57 (section 1545-145 R. S.) defines the duties of the director of public improvements as follows:

"The director of public improvements shall have the supervision and exclusive control of the lighting of the streets, alleys, avenues and public places and buildings of the corporation, and may at any time when in his judgment the best interests of the corporation will be subserved, advertise for the proposals for lighting the same for a term, said advertising to be in accordance with the provisions of section 4 of this act; and he shall or may reject any or all such proposals or bids, and for the faithful performance of any such contract, may demand such security as he deems proper; or may if authorized by ordinance of the city council, establish an electric light plant for the purpose of lighting the city."

Section 59 of the charter law (section 1545-147 R. S.) in providing for the subdivision of the department of public improvements, pro-

vides * * * "Second, a division having charge of the repairing, cleaning, and lighting of the streets, avenues, alleys, highways, public grounds and catch basins. of which division there shall be a chief officer, to be called the superintendent of streets."

The charter law applies only to cities of the first grade of the second class (Columbus).

On March 22, 1898, the legislature amended sections 2486, 2487, 2488 and 2389, whereby the council of any city or village was empowered to erect electric works at the expense of the corporation, or to purchase any electric works already erected therein, and in the carying out of such powers to create and appoint a board of trustees to perform the duties incident thereto. The amendment made to said sections in 1898 consisted mainly in enlarging the scope of said sections by making them applicable to electric works, they, prior to that time, having only applied to gas works.

It is conceded that, prior to 1898, under the charter law the entire control of the lighting of the city, was vested in the director of public improvements. The charter law contains no reference to sections 2486, 2487, 2488 and 2489. These sections are a part of the general act or statute and their amendment was the amending of a general statute. Does such amendment arrect, by implication, that part of the charter law, giving to the director of public improvements the control of the electric lighting plant.

"A local or special act is not invalid or otherwise affected by the conflicting provisions of a subsequent general statute on the same subject, unless the legislative intent that such effect be given the later enactment is clearly manifest.."

Commissioners v. Board of Public Works, 39 O. S., 628.

The following is from the opinion of judge Owen in the same case: (page 632).

"Repeals by implication are not favored. So, particular and positive provisions of a prior act are not affected by a subsequent statute treating a subject in general terms and not expressly contradicting the provisions of the prior act, unless such intention is clear .

Endlich on Interpretation of Statutes, section 223, says:

"It is but a particular application of the general presumption against an intention to alter the law beyond the immediate scope of the statute, to say that a general act is to be construed as not repealing a particular one, that is, one directed towards a special object or a special ciass of objects. A later affirmative law does not abrogate an earlier one by mere implication.

"The general statute is read as silently excluding from its operation the cases which have been provided for by the special one; for as was said of the relation of a general act to a local one applying to a single county of the state, 'it is against reason to suppose that the legislature in framing a general system of the state, intended to repeal a special act which local circumstances of one county have made necessary".

Again, it has been held that when a general law relating to municipal corporations contains no provision expressly applying, e. g. to

the levy and collection of taxes, etc., by cities incorporated under a special statute, the provisions of the latter on the subject remain in force.

Burke v. Jeffries, 20 Iowa. 145.

The same general principles are announced in the sections from Sutherland on Statutory Const. cited by counsel for the city.

The authorities quoted point with unerring certainty to the conclusion that the amendments of 1898 to the general statutes upon the subject of gas and cletric light works do not affect or quality the authority of the director of public improvements over the electric light plant, and hence we could have no right or authority to surrender to the other defendants nerein the control of said plant.

If the legislature of 1898 had intended that the amendments referred to should embrace electric light plants then in operation, as was the plant in this city, the language used would have been more comprehens:ve. These amended sections concern only gas works or electric works to be purchased or erected, not such works erected or in operation. A city might purchase from a private party an electric works in operation, but that is not this case.

A mandatory order to the director of public improvements commanding him to operate the electric light plant now owned by the city would be warranted by the circumstances of this case, but for the fact that the plaintiff admits that the city council has failed to provide funds for its operation. If this be true, and the city council has not, by a vote of three-fourths of all the members elected thereto waived the exaction of any liability from the bondsmen of said defendant for debts contracted by him beyond the amount appropriated for such purpose, by ordinance of said council, and it appears that there is no such waiver, then said derendant can not be compelled to operate said municipal plant. So far as the pleadings show the fault is in the city council to properly provide funds for such purpose, the reason for such failure not being disclosed by the attornes in the case.

Finding and decree accordingly.